**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)**

| | |
|---|---|
| In re<br><br>**JEFFERSON DEVELOPMENT PARTNERS, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 14-10129-HJB |

**MOTION BY CHAPTER 11 TRUSTEE FOR ORDER
AUTHORIZING PRIVATE SALE OF REAL PROPERTY FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**

In accordance with Sections 105 and 363, Federal Rules of Bankruptcy Procedure 2002 and 6004, and Massachusetts Local Bankruptcy Rule 6004-1, D. Ethan Jeffery, the Chapter 11 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Jefferson Development Partners, LLC (the "Debtor") requests the entry of an order authorizing him to sell (the "Sale") all of the Estate's right, title and interest in certain real property known and numbered as 437 Whittenton Street and on Warren Street, Taunton, Massachusetts (the "Real Property"), free and clear of all liens, claims, encumbrances, and interests, to Whittenton Investment, LLC (the "Buyer") for the total sum of $1,650,000.00 (the "Purchase Price"), with $1,300,000.00 payable in cash at the closing of the proposed sale, and a contingent payment of $350,000.00 paid within twenty-four (24) months of the closing of the sale. As is described in the P&S (as defined below), the contingent payment is subject to reduction for certain potential demolition and removal costs. All liens, claims, encumbrances, and interests against and in the Real Property would attach to the proceeds of the Sale with the same validity, priority and enforceability as existed on the Petition Date (as defined below). The terms of the Sale are described in a purchase and sale agreement attached as Exhibit A (the "P&S"). The Buyer is not an Insider and has demonstrated that it has the ability to close the

transaction contemplated by the P&S.

By a separate motion, the Trustee has requested that the Court (a) shorten the notice of the Sale required under Federal Rule of Bankruptcy Procedure 2002, and (b) approve bid procedures with respect to the proposed sale.

In further support of this motion, the Trustee avers as follows:

## BACKGROUND

**A.    General Background.**

1.    On January 15, 2014 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Massachusetts (the "Court").

2.    The Debtor is the owner of the Real Property. The Real Property is known as the Whittenton Mills complex in Taunton, Massachusetts, and includes thirty-two (32) contiguous buildings, with approximately 543,383 square feet of total floor space, located on 47 acres of land surrounding the banks of the Whittenton Mill Pond.

3.    The following parties have mortgages or attachments against the Real Property to secure alleged claims against the Debtor (collectively the "Secured Creditors"): (a) the City of Taunton, in the approximate amount of $670,000; (b) Self Employed Retirement Plan and Trust ("SERPT") in the approximate amount of $2.3 million;[1] (c) 3333, Inc. in the approximate amount of $80,000; (d) Euler Hermes ACI in the approximate amount of $64,000; (d) CLE Engineering in the approximate amount of $18,000; (e) Marsh, Moriarity, Ontell & Golder, P.C. in the approximate amount of $25,000; and (f) Atlantic Elevator South Co., Inc. in the approximate amount of $4,000.

4.    The secured claim asserted by the City of Taunton includes approximately $180,000 of charges for real estate taxes (the "Real Estate Taxes"), approximately $55,000 of charges for

---

[1] The Nicholas E. Lanphier Family Trust also asserts an interest in the note and mortgage held by SERPT. For ease of

water and sewer and utilities (the "Municipal Charges"), and approximately $438,000 of charges for fire watch services for the Real Property (the "Fire Watch Charges").  The Trustee does not dispute the principal balance of the Real Estate Taxes or the Municipal Charges.  The Trustee does dispute both the amount of the Fire Watch Charges and the lien asserted by the City of Taunton with respect to the Fire Watch Charges.  Among other things, one of the liens securing the Fire Watch Charges was recorded after the Petition Date, and it is unclear whether the amount of the Fire Watch Charges are accurate and/or whether the fire watch services were appropriately charged under applicable Massachusetts law.[2]  In addition to the foregoing disputes, SERPT also disputes some or all of the interest charges asserted by the City of Taunton.

5.     The Trustee previously reached an agreement with the Lenders (the "Lenders Agreement") [doc. no. 167] that was approved by the Court [doc. no. 181].  Pursuant to the Lenders Agreement, the Lenders agreed to fund the costs of administering the Real Property pending a sale of the Real Property by a public auction (the "Auction").  The Lenders Agreement also provided that, in the event no other party bid on the Real Property at the Auction, the Lenders would credit bid and acquire the Real Property.  The Trustee filed a motion to approve the sale of the Real Property by public sale, which was approved by the Court by an order dated August 14, 2014 [doc. no. 188].

6.     Prior to the Auction, the Trustee obtained Court approval to retain J.J. Manning Auctioneers (the "Auctioneer") to market the Real Property and conduct the Auction.  The Auctioneer conducted its usual marketing efforts, including advertisements, mailings and e-mail notification to likely interested parties.  Prior to the Auction, the Auctioneer received verbal or website inquiries regarding the Real Property from over twenty-five (25) entities.

---

reference, SERPT and the Nicholas E. Lanphier Family Trust will be referred to collectively as the "Lenders".
[2]  The Trustee reserves all of his rights, claims and defenses with respect to the disputed claims asserted by the City of Taunton.

3

7. The Trustee conducted the Auction on October 9, 2014. SERPT's credit bid of $1.7 million on behalf of the Lenders was the only bid for the Real Property at the Auction. Although the Trustee was prepared to close on the sale of the Real Property pursuant to SERPT's bid and made demand on SERPT to close, the Lenders have declined to close on the sale of the Real Property. SERPT has also declined to advance funds for the operating costs of the Real Property pursuant to the Lenders Agreement. Accordingly, the Lenders are in breach of the Lenders Agreement, and the Trustee reserves all of his rights and claims under the Lenders Agreement.

8. As a result of the Lenders' failure to close on the sale of the Real Property, the Trustee sought offers to purchase the Real Property from, among others, the parties who appeared but did not bid at the Auction. David Murphy, the Debtor's principal, offered to purchase the Real Property for the sum of $2.1 million. The Trustee negotiated an asset purchase agreement with Mr. Murphy (the "Murphy P&S") and sought and obtained Court approval of a sale of the Real Property to Mr. Murphy free and clear of liens, claims and interests. Mr. Murphy subsequently failed to close on the purchase of the Real Property and is in breach of the Murphy P&S. The Trustee reserves all of his rights and claims under the Murphy P&S.

**B.    The P&S.**

9. Under the P&S, the Purchase Price consists of the following: (a) cash (the "Cash Purchase Price") in the amount of One Million Three Hundred Thousand Dollars ($1,300,000.00), to be paid on the closing of the sale (the "Closing Date"), and (b) a contingent payment of $350,000.00 less the cost of demolition and disposal of the resultant construction and demolition debris ("C&D") of a number of specific buildings on the Real Property (the "Buildings"), but not less than $0.00 (the "Contingent Payment"). The costs that reduce the amount of the Contingent Payment include all costs for detection, remediation and disposal of hazardous waste found in the Buildings or as a result of the demolition. The Contingent Payment shall be determined and paid on

the earlier to occur of (y) the date upon which the Buildings are demolished and the C&D removed from the Property, or (z) the later of the date that is eighteen (18) months following the Closing Date, or, in the event the City of Taunton fails to permit the immediate demolition of the Buildings following the Closing Date, then a date that is twenty-four (24) months from the Closing Date. Any costs that reduce the Contingent Payment must be verified by the submission of invoices to the Trustee or his successor.

10. The P&S provides that the closing (the "Closing") on or before three (3) business days following the entry of the Sale Order (as defined in the P&S), or such other date that is agreed to in writing by the Parties (the "Closing Date").

11. Upon the execution of the P&S, the Buyer delivered to the Trustee the sum of Seventy-Five Thousand Dollars ($75,000.00) as an earnest money deposit (the "Deposit"). The Deposit is to be held by counsel for the Trustee subject to the terms of the P&S.

12. The Buyer is not entitled to a break-up fee under the P&S.

### RELIEF REQUESTED

13. Pursuant to Section 363(f) of the Bankruptcy Code, the Trustee seeks to sell the Real Property free and clear of all liens, claims, and interests, with any such liens, claims and interests to attach to the proceeds of the Sale with the same validity, priority and enforceability as existed on the Petition Date.[3]

14. The proposed procedures for the Sale are described below.

**A.   Sale of the Real Property by Private Sale.**

15. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

16. In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course may be held by private sale or public auction. The Trustee attempted to sell the Real Property by public auction, but was unable to locate a buyer who would close on the sale of the Real Property. Selling the Real Property to the Buyer is in the best interest of the Debtor's bankruptcy estate as, absent such a sale, the Trustee may be forced to abandon the Real Property.

B. **Sale of Real Property Free and Clear of Liens, Claims and Interests**

17. Pursuant to Section 363(f) of the Bankruptcy Code, a trustee may sell property free and clear of liens, claims and encumbrances if one of the following conditions is satisfied:

   a. applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

   b. the lienholder or claimholder consents;

   c. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

   d. such interest is in a bona fide dispute; or

   e. the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

18. Of the claims asserted by the Secured Creditors, those asserted by the City of Taunton and the Lenders are in bona fide dispute. With respect to the City of Taunton's secured claim, one of the liens securing the Fire Watch Charges was recorded after the Petition Date, and it is unclear whether the amount of the Fire Watch Charges are accurate and/or whether the fire watch services were appropriately charged under applicable Massachusetts law. With respect to the Lenders' claims, the Lenders are in breach of the Lenders Agreement, giving rise, among other things, to counter-claims by the Debtor's bankruptcy estate against the Lenders.

---

[3] The Trustee continues to investigate any find all asserted liens or other interest which may encumber the Real Property and reserves the right to challenge the validity, priority, and perfection of any asserted lien.

19. The sale of the Real Property free and clear of liens, claims and interests is also appropriate because: (a) the Trustee believes that the Secured Creditors may consent to the sale, thus satisfying Section 363(f)(2) of the Bankruptcy Code;[4] and (b) the Secured Creditors could be compelled in a legal or equitable proceeding to accept a money satisfaction of their interests because, among other things, Massachusetts law permits the sale of real estate in Massachusetts free and clear of liens and claims for unpaid taxes (*see* M.G.L. c. 60 §64), for eminent domain purposes (see M.G.L. c 70 §3), in a mortgage foreclosure proceeding (*see* M.G.L. c. 244), thereby satisfying Section 363(f)(5) of the Bankruptcy Code. *See In re Boston Generating, LLC*, 440 B.R. 302 (Bankr. S.D.N.Y. 2010) (New York foreclosure law permitting sale free of junior lien interests is sufficient to meet requirements of Section 363(f)(5)); *In re Jolan*, 403 B.R. 866 (Bankr. W.D. Wash. 2009)(State law tax and probate statutes permitting sale of property free of liens are sufficient to meet requirements of Section 363(f)(5)). The Sale of the Real Property free and clear of liens, claims and interests pursuant to Section 363(f) of the Bankruptcy Code is therefore warranted.

20. Although not a condition to the Sale under the P&S, the Trustee reserves the right to seek a finding that the Buyer is a buyer in good faith within the meaning of Section 363(m) of the Bankruptcy Code.

### REQUEST TO PAY UNDISPUTED PORTION OF CITY OF TAUNTON SECURED CLAIM

21. With respect to the City of Taunton's secured claim, the Trustee does not dispute the principal balance of the Real Estate Taxes (approximately $150,000). Because the Real Estate Taxes constitute a statutory first priority lien on the Real Property, the post-petition interest on the

---

[4] There is ample case law standing for the proposition that an interest holder's failure to object to a sale free and clear of the interest is deemed consent so long as notice of the sale was provided to the interest holder. *See Future Source, LLC v. Reuters, Ltd.*, 312 F.3d 281, 285-6 (7th Cir. 2002)(Where notice of sale free and clear of interests was given, failure to object is deemed consent under Section 363(f), "[i]t could not be otherwise; transaction costs would be prohibitive if everyone who *might* have an interest in the bankrupt's assets had to execute a formal consent before they

principal balance of the Real Estate Taxes will continue to accrue under Section 506(b) of the Bankruptcy Code until the principal balance is paid. Stopping the further accrual of interest on the Real Estate Taxes is in the best interests of the Debtor's bankruptcy estate and its creditors. The Trustee therefore requests the authority to pay to the City of Taunton, on the Closing Date, the principal balance of the Real Estate Taxes.

## NOTICE

22.     This motion and the proposed Notice will be served upon: (a) the United States Trustee, (b) counsel to the Debtor, (c) all parties asserting secured claims against the Debtor, (d) the Internal Revenue Service, (e) the Massachusetts Department of Revenue, and (f) all parties who have requested notice in this case (the "Primary Service Parties").

23.     Once the Trustee has been provided with an objection deadline and a hearing date, the Notice will be completed and served upon the Primary Service Parties, all creditors and all parties who have expressed an interest in the Real Property. This manner of notice will provide creditors, potential bidders and parties in interest with sufficient notice of this motion and the proposed Sale.

(this space intentionally left blank)

---

could be sold."); *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994)(Same); *In re Elliot*, 94 B.R. 343, 345–46 (Bankr. E.D.Pa. 1988)(Same).

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order: (a) authorizing the sale of the Real Property pursuant to the P&S and as set forth in this motion; (b) authorizing the Trustee to convey all of the Debtor's right title and interest in the Real Property free and clear of any and all liens, claims and interests, with any liens, claims and interests to attach to the proceeds of the Sale with the same validity, priority and enforceability as existed on the Petition Date; (c) authorizing the Trustee to pay the principal balance of the Real Estate Taxes at closing; and (d) providing the Trustee with such other and further relief as is just and proper.

    Respectfully submitted,

    D. ETHAN JEFFERY,
    CHAPTER 11 TRUSTEE OF JEFFERSON
    DEVELOPMENT PARTNERS, LLC,
    By his counsel,

    */s/ D. Ethan Jeffery*
    D. Ethan Jeffery (BBO #631941)
    Kathleen R. Cruickshank (BBO #550675)
    Murphy & King, Professional Corporation
    One Beacon Street
    Boston, Massachusetts 02108
    Tel:   (617) 423-0400
    Fax:  (617) 556-8985
    Email: Ejeffery@murphyking.com

Dated: April 21, 2015

680515

9